## Case No. 11,919.

### ROBERTS v. YATES.

[16 Law Rep. 49.]

Circuit Court, D. South Carolina. 1853.

CONSTITUTIONAL LAW—COLORED SEAMEN.

[The statutes of South Carolina, requiring the arrest and detention in jail of colored seamen coming into ports of the state, during the time their vessel remained in such ports, are valid and constitutional.]

The vexed question of the constitutionality of the laws of several of the Southern states, by which free blacks, citizens of other states, arriving from sea in Southern ports, are forcibly taken from their vessels and detained in jail while the vessels stay in port, and the expense of the arrest and detention charged to the vessel, seems now in a fair way to be passed upon by the supreme court of the United States. We take the following account of the proceedings in the circuit court of the United States, in a case arising under the laws of South Carolina upon the subject, from the Charleston Courier of April 22d:

"The case of Reuben Roberts v. Jeremiah D. Yates, sheriff of Charleston district, was brought up yesterday by consent before Judge Gilchrist, as in a special term of the United States circuit court. Judge Wayne having been again prevented from attending. The case was disposed of in quite a summary manner, the facts being all admitted by agreement, and no argument entered into beyond a necessary statement on each side. As the name of Reuben Roberts will perhaps be transmitted to fame in connection with the further progress and discussion of this case, we mention, for the information of all concerned, that he is a full-fledged negro, now about twenty-four years of age, although apparently much older. (It has been often remarked that negroes wear their age better in slavery than in any other state.) He is a native of Nassau, in New Providence, an island of the Bahama group, and was lately a cook on board a British schooner, the Clyde, Capt. Bethel, which vessel arrived at this port from Baracoa on the 19th May, 1852. On that day the sheriff of Charleston district, as directed by the law (A. A. 1835), boarded the vessel, arrested the cook Roberts, and confined him in jail, where he was detained until the vessel was ready for sea. The Clyde accordingly was cleared for Baracoa on the 26th May, on which day Roberts was replaced on board by the sheriff, making the period of detention and imprisonment eight days; and for this his suit was brought in the form of an action in trespass for assault, battery, and false imprisonment, the damages being laid at four thousand dollars.

"The plaintiff was represented by Pettigru and King; the defendant by Attorney-General Hayne, who had been charged with the case by the state, and A. P. Butler, C. G. Memminger, and Edward McCready, as special counsel. Although in form an ordinary private action for damages, it is known to all that the case involves and depends upon the constitutionality and validity of the several laws of South Carolina relating to the colored seamen and immigrants, and especially the act of the 19th December, 1835 (7 St. at Large S. C. p. 470), under which Sheriff Yates acted in this manner. This test question was submitted nakedly and simply, as the substantial facts of the case were admitted without evidence or contest, and it was also admitted that the sheriff had strictly pursued the course prescribed by our laws.

"The case was opened briefly by J. L. Pettigru, who read the pleadings. The declaration was in the ordinary form, specifying the facts of the case, and praying damages; and was met by the general issue, and also a special plea admitting the act alleged as a trespass, and setting forth in justification the several acts of South Carolina on the subject of colored seamen, from 1794 to 1835. To this special plea the plaintiff entered a replication 'de injuria sua,' and upon this issue was joined. The points indicated as those chiefly relied on by the plaintiff are the commercial convention between Great Britain and the United States of the 3d July, 1810, the reciprocity act of congress of the 29th May, 1830 [4 Stat. 419], and the proclamation of President Jackson, issued in conformity to the said act on the 5th October, 1830 [Id. 817].

"For the defence, Attorney-General Hayne, after producing a witness (Mr. Kanapaux) to prove that Roberts was a negro, made a similar brief statement of facts and references.

The defence was based on the following points: Several acts of the general assembly of this state, which, for the convenience of our legal readers, we will specify by their dates, by which all may be found (7 St. at Large): 20th Dec., 1794 (page 433); 20th Dec., 1800 (page 436); 19th Dec., 1801 (page 444); 18th Dec., 1802 (page 447); 17th Dec., 1803 (page 449); 20th Dec., 1820 (page 459); 21st Dec., 1822 (page 461); 20th Dec., 1823 (page 463); 20th Dec., 1825 (page 466); and 19th Dec., 1835 (page 470). The defendant, in addition, refers for justification and authority to the act of congress of 28th February, 1803, concerning 'the importation of certain persons into certain states' (2 Stat. 205.)

"These facts and references having been submitted without argument, GILCHRIST, District Judge, briefly charged the jury that the position of the case called upon him only to give his opinion, without argument or reasons. He considered the acts of the state, under which the defendant justified, as valid and constitutional, and under this direction, the jury (A. H. Hayden, foreman) accordingly brought in a general verdict for the defendant. The plaintiff submitted, in due form, a bill of exceptions to the judge's charge, and the case will accordingly go up to the supreme court of the United States.

"The questions involved, and the eminent array of counsel that will appear before that august tribunal, will make the case an object of interest and attraction, although of the final result we need not say that we entertain no doubt."